### JOHN T. WILSON
### v.
### JOHN E. FAWKNER.

*Fraudulent Sales—Replevin—Evidence.*

1.   Whether a given sale was *bona fide* and upon a valid and fair consideration or whether fraudulent and without sufficient consideration and intended to hinder and delay creditors, is a question of fact for the jury.

2.   The burden of showing fraud is always upon him who charges it. Honesty and good faith are presumed to govern in business transactions until they are overturned by proof.

3.   A debtor may sell all his goods to pay his debts and a *bona fide* creditor taking them in discharge of his debt for a fair consideration will hold the goods notwithstanding other creditors may lose their entire debt.

[Opinion filed December 8, 1890.]

APPEAL from the Circuit Court of Livingston County ; the Hon. N. J. PILLSBURY, Judge, presiding.

Messrs. McILDUFF & TORRANCE, for appellant.

Mr. G. W. PATTON, for appellee.

C. B. SMITH, P. J.    This is an action in replevin by appellee, Fawkner, against appellant, Wilson, who, as sheriff, levied upon the goods in question, certain attachment writs and took

the goods as the property of C. W. Fawkner and Mel Shepard, a firm doing business as Shepard & Fawkner.

John E. Fawkner replevied the goods from Wilson and claimed them as his own goods. A trial resulted in a judgment in favor of appellee for the goods in question, and appellant brings the case here on appeal and seeks a reversal for the errors complained of in the record.

It appears from this record that C. W. Fawkner, a brother of appellee, and Mel Shepard, formed a copartnership for the purpose of dealing in clothing in Fairbury, Illinois, and entered upon the business. John E. Fawkner lived in Indiana. Some time after this firm commenced doing business, they also began to borrow money from John E. Fawkner in the State of Indiana.

Appellee testifies that he loaned money to this firm on three different occasions, taking notes for the first two loans, and on the third loan being made the first two notes were taken up, a new judgment note being given for the amount due on the first two loans and the amount of the third, aggregating a total sum of $4,197.90.

Some time after this last transaction C. W. Fawkner again asked for a further loan. His brother, appellee, then became alarmed, and inquired how it was they wanted to borrow so much money, and was informed that the firm was pressed by Chicago parties for payments of bills, which they could not meet.

Appellee then became alarmed for his own security and went to Fairbury to see about collecting or securing his own debt. He found a stock of clothing in value but little larger than his own debt. He demanded security, but the firm could not give it. He then consulted counsel and was advised that he had better buy the stock, and in that manner protect himself, and take the goods in discharge of his debt. An invoice recently before taken of the stock showed them to be worth something like $5,000. It was finally agreed by the firm and appellee that they would sell him the stock in payment of his debt and appellee to pay a bank debt of the firm of $650, which appellee agreed to do, and thereupon the key of the

store and the store and stock of goods were turned over to the actual custody of appellee, and he took possession and control and remained in such possession some three or four days, when he left for home, and left the store in the hands of his brother, C. W. Fawkner, as his agent and clerk. Numerous creditors of Shepard & Fawkner, learning of this transfer of the stock, sued out writs of attachment and had them levied on the stock of goods as the property of Shepard & Fawkner. Appellant Wilson, with these attachment writs, levied on the goods and took possession of them.

On the trial of the replevin suit appellee admitted the *bona fide* character of the debts of the various creditors and the regularity of the writs of attachment. So that the only question involved in the replevin suit was the good or bad faith of the sale of the stock of goods by Shepard & Fawkner to John E. Fawkner, appellee. Whether that sale was *bona fide*, and upon a valid and fair consideration, or whether fraudulent and without sufficient consideration and intended to hinder and delay creditors, was a question of fact for the jury. In this case appellee testified positively to making the loans and advancing the money, and of taking the stock in payment of his debt, and of taking actual and real possession of the goods, and that the transaction was in good faith and that the stock was worth but little, if anything, more than his debt.

This evidence was met by an effort to show that appellee did not have so much money and that he was a poor man, and that the money claimed to have been loaned belonged to his wife.

The question of the good faith and validity of the sale of the stock of goods were fully and fairly submitted to the jury, and while the whole testimony and all the circumstances surrounding the transaction may not be entirely free from doubt as to the real nature of the transaction, yet we can not say from this record that the jury were not justified in finding as they did.

The burden of showing fraud is always upon him who charges it. Honesty and good faith is presumed to govern in the transactions of men until it is overturned by proof.

If the appellee was a *bona fide* creditor in this case, then he had a right to secure himself, even at the expense of other creditors, so long as he took no more goods than reasonably necessary to pay his own debt, and this he had a right to do for his own protection, no matter what the motive of the seller may have been. A debtor may sell all his goods to pay his debts, and a *bona fide* creditor, taking them in discharge of his debt for a fair consideration, will hold the goods, notwithstanding other creditors may lose their entire debt. Hessing v. McCloskey, 37 Ill. 341; Herkelrath v. Stookey, 63 Ill. 486.

Some other objections are urged to the ruling of the court in the admission and rejection of evidence and the giving and refusing of instructions.

We have examined all these objections carefully, and find them wanting in substance.

Possibly some technical errors may have intervened, but nothing to justify a reversal of this judgment, nor to require a discussion of them in detail. Finding no reversible error in the record, the judgment is affirmed.

*Judgment affirmed.*